Good morning, Your Honors. Mary Cryer on behalf of Dawn Simmons and the parents of Marissa Kirby. Before I begin, I want to bring the court back to what is very basic law on a summary judgment in this circuit. In Shortstop v. Riley in 1991, this court said the following, A district court is not permitted to resolve factual disputes by weighing contradictory evidence because that is the province of the jury. And the first error I'm here to discuss is just that. The district court in ruling on this summary judgment was confronted with many facts. But what the district court chose to do was use its own interpretation of the email I'll discuss in a second and take one snippet of testimony from the principal, Sanchez, out of context to say that the school never requested that the basketball parents draw. And there's the error. Before we get to the summary judgment, I'm wondering if we have jurisdiction over this appeal. Why is that, Your Honor? Well, the opening brief says the basis for the jurisdiction is 28 U.S.C. 1292, but then you reference the district court's final judgment. I think you meant to say 1291, but I'm wondering if there was, in fact, a final judgment in this case. I'm not quibbling over the typo or whatever for that. I'm wondering, given that there's partial summary judgment, did the district court ever put it with a bow and make it a final summary judgment? I believe so, Your Honor, and this is why. The only thing remaining in this case is the Simmons claim, and when I say Simmons, I include Marissa Darby, for U.N. benefits, which is provided by the Brotherhood Mutual. When the district court granted Brotherhood Mutual's summary judgment, it ended the case. There is nothing to try at this point, which is why I do believe this court has jurisdiction. Did it enter any kind of order? It just entered the partial summary judgment. Nothing happened after that? No, nothing, because the summary judgment . . . Do we need to remand under . . . We have a case, Marquardt, where we did that recently, where we remanded to let the district court tell us that it's over, because it's not clear from having a partial summary judgment that the case is actually over. I'm not going to quibble with what the district court did, and of course, Your Honors, if that's what you wish to do, that's fine. We can come back. If we needed to do a limited remand, then so be it, but you're not going to quibble on that? I'm not going to quibble. The only thing I will point out to the court, regardless of whether it's called a partial or a full, he has dismissed the case completely. There is nothing left there. Okay. So back to your argument on summary judgment, unless somebody else has a question about jurisdiction. Summary judgment. Here we go. So here's what happened. Let me bring Your Honors back to the factual situation here. There was a basketball game in Monroe that the school was playing in. Christopher Simmons was a basketball player. Sometime before the email that came out, certain parents at the school, not including Don Simmons, decided that they wanted to spend the night in Monroe. As a result of that, the principal and the AD decided we're not going to take the bus because some of these parents, it would be easier just to transport everybody separate. On the 14th, December 14th, this is the first paragraph of the email. We are organizing rides to the game. We will not be taking the bus. Please let me know if your child can ride with you or if they need a ride. That's what Don Simmons was told. Now, in her affidavit, which I will point out the district court did not consider, which was part of the evidence. She averred that but for that request, she wouldn't have gone. She took off work to get her son to that game. Of course, tragically, on the way back, three of her children were killed. She was severely injured and Marissa, Christopher's girlfriend, was severely injured. It's a terrible thing. It is. It is a terrible thing, but I'm wondering because we have to deal with the law. It's a tragedy. Even if the school had said it was going to be assigned to parents, it wasn't actually the parent who was driving. Can you address that? Absolutely. I was expecting Your Honor to address that. If you take a look at the policy, which is what we're dealing here, the language of the policy itself, it doesn't say who the school determines to do it. It says any other person acting on your behalf at your request. The reason Lindy was driving. But there was no request for a non-parent to drive the car. That's even assuming that the e-mail is a request. Correct. I'll get to that, Your Honor, because we're going to dovetail into this, into the text message. Let's travel on the e-mail because that's what came into evidence. The text message was excluded from evidence. Correct. But even assuming it was a request, nowhere was it a request for someone else other than a parent to be driving. Well, that is true. So regardless of what the insurance policy's language says, the request can't be expanded based on the policy language. It's actually the request itself that we're traveling on. Well, we get to another. I take Your Honor's point. Here's the other issue, though. The policy itself also includes the word use. Yeah, but the request doesn't. The request was we need the kid to go to the game. On the way home, it's dark. It is 200 miles. This is a 400-mile round trip. Dawn Simmons can't see very well. So for the safety, Lindy drove, which is, of course, what we'd want to consider. But I will point out that use, and the reason I bring up use, the definition of what is covered includes the word use. And under Louisiana law, which is what this Court will apply for this question, use includes riding in. And Dawn was in that car. If they wanted to write the policy to say only drivers. But you go into the policy, but you don't get to the policy unless there's a request. The request cabins how far we can go into the policy, does it not? I don't agree, Your Honor. How so? This is why. The policy must be interpreted for coverage, not to exclude coverage. So there's no request at all. There's still coverage. The way this thing is done is they request. And the reason I'm going to that text message, and I know that we're not there yet, is because the text message itself, which our position is it should have come in. But when you look at that text message, and here's where I'm going with this, Your Honors. We are asking Your Honors to do one simple thing. Send it back for the jury to decide. The jury may agree with what you just said, that that request did not include Lindy. Entirely possible. The text message, if it comes in, though, I will point out, says, Mom, they told us the parents have to take us or anyone else. So if Christopher is told by his coach, you need to get a ride to the game, anybody, well, now you've gone beyond the parent. And that's why we'll argue whether that text message comes in. I believe it should. The text message breaks my heart as a parent of a son. But it's double hearsay. I understand that. And you're trying to admit it for the truth of the matter asserted. There's just no way around it. And so we're looking at what the district court, it's ruling whether it was an abuse of discretion. How do you win on that? I win on that because the district court, there's other evidence here too. The testament, what the district court hinged mainly on, it wasn't even Lindy. It was the district court's position that they never asked the parents, there was no request at all. And that hinged upon the principal, Sanchez, saying, we didn't ask the parents to drive. And she did say that. Well, no, she says, please let me know if you'll be driving your child. That's not a request. I mean, I'm giving you that it's a request. When we were talking earlier about how it's not a request for a non-parent, but if you read it, if you read it literally, and then you consider the testimony, which I guess is not disputed, there's not a request there. It just says, please let us know if you're doing this. They're clearly finding rides for all the players, but it's not really a request. Not when taken in conjunction with the testimony that they offered. This is why I'm pointing out the testimony. She said that, but what she was talking about was not Dawn Simmons. Remember when I began this, I said that there was a discussion with parents saying, we want to stay in Monroe on the weekend. And she's saying, we never asked them to do that. They didn't. Originally, they planned to take the bus. But the one thing that she did say and the athletic director said was, the parents driving took the place of the bus. They both said that. And I guess where I'm going here is, the email, a jury may believe just what you're pointing out, that the email didn't request the parents, that the email didn't include Lindy. All of this may be true. But the problem here is not what the facts are. The problem is there's contradictory facts. And so with respect, Judge Wilson, you're looking at the email and reading it one way. Other people may read it a different way. That's why we have a jury. But nobody can read it to say this was a request for a non-parent to drive the players to and from. Nobody can read it that way, which means a reasonable jury could not find the way you're talking about, which means summary judgment's appropriate. The problem I have with that, Your Honor, is that that is taking the email and putting it into the policy. All the policy says is... Well, no, the email's what opens the gate to the policy. And, I mean, there's another question in my mind, I guess, as to whether this is a request or not. Is that a matter of law, like contract interpretation, or is it a factual issue? It's not. Well, the policy is a contract. We know that. But the email itself, that is a factual issue. What did it encompass? And the other thing that we have here is, again, I keep coming back to the text message, and I understand what Your Honor says about double hearsay. Well, what I want to point out about that text message is it was sent on a Friday afternoon at 417 p.m. to his mother. And that day, the AD has said, we have practice every day after school if we don't have a game. Christopher hears this. He tells his mother what he's heard. That is a present-sense impression and should be allowed. Could it also be a verbal act that is proof that the request occurred? Yes. Was it offered for that reason? What I would say is it is proof of the fact that the request was made because the one thing that they did say, not disputed here, is that the decision was made before the email was sent. And also, you know, we have in our case law that evidence offered for summary judgment purposes need not yet be in a form admissible for trial. Agreed. Is there some way that there is some other way that this evidence could come in? I think. In a form that would be admissible? Well, obviously, we cannot call Christopher to testify. You can't call Christopher, but are there other corroborating people for this?  Did you tell the district court of this at the time of the summary judgment? Because if that format was not going to be accepted, you could say, Your Honor, this is not a format that we understand that, but Deepwater Horizon says as long as we can get it in an admissible format, it could survive summary judgment. Where I think Your Honor is going, and I do believe this would be done if it goes back, there were other children at that meeting. There were other players. Did you get that done? No, not yet, because the summary judgments were filed and there we were. But since then, even? We can't. What do you mean you can't? The case, as I said before, once the district court granted this summary judgment, it's done. Didn't you get to respond to the summary judgment motion? Obviously, Your Honor, we did. You could file a reconsideration and bring forth these. Well, you could get affidavits. We can, but we have to go back to do that. No, why couldn't you do it when you were responding to summary judgment? It wasn't done, Your Honor. That's all I can tell you. Well, okay, so you get a remand because you didn't do it in the first go? Well, I take the comment as said. So right now, as we sit here, there's nothing that you can point to that would corroborate what the deceased child said. I think the corroboration does exist, and I think it exists with the AD, because the one thing he did say was, yes, we knew this before, and he admits there were meetings. And Dawn's affidavit, which, as I said, the court ignored, Dawn has authenticated the text message and said her son sent it to her, and she acted based on that also. So I guess the point here, Your Honor, is we may lose at trial. Entirely possible we will. But where I'm coming down here on this case is that the district court, with all respect, overstepped and read an email and looked at testimony and said, well, this is what it means. And that, my point is not that everything you're saying might not ultimately become correct. It may. But it was not a proper thing to do to parse through the evidence, contradictory evidence, different reads, and decide, as a matter of law, this is what this is. Okay. I think we have your argument, and you've saved time for rebuttal. Thank you, Your Honor. Okay. We'll hear from Mr. Bryan. Good morning, Your Honor. May it please the Court. I think we've touched on the first issue, which is, is this a fact issue? The first issue, could we do jurisdiction? Yes, that is the first issue. I ran right past that. Since, and I want to say that since the appeal was initiated, we had a separate hearing in the district court to clean up that issue, to resolve that, yes, yes, the entire case is resolved, but for the appeal. Y'all have done that? There's been a subsequent hearing, which I don't think is in the record on appeal. But is there an order? There is a district court order. There's a new order that's final judgment or finishes it out or something? To that effect, and perhaps we could submit that. If everybody agrees to that, that would be helpful for the Court. And if someone disagrees, you can voice that. Okay. Thank you. Very good. And, yes, thank you. That's a point well taken and should have been cleaner to begin with. The first point I was looking to make is that I don't believe this is a fact issue at all. I think it's a question of law. This is not a case where mom says the coach asked me to drive and the coach says, no, I didn't. There is no conflicting testimony. What there is is this e-mail. It is a written document. The summary judgment is determining the meaning of that written document and the meaning of the written insurance policy contract. Everything else is a glass on that. That's what turns on the case is the e-mail, which is a written document. There's no conflict in it. I appreciate they want to read it in a very imaginative way, but as Judge Wilson was pointing out, there's no request in there that you drive the money. If the coach did say that, what the text seems to say, then that would create a fact issue, wouldn't it? If the coach did say that, which, of course, the coach was deposed and didn't say it. He didn't say he didn't say it. It says he doesn't remember, right?  And that's always really interesting when the person doesn't remember the key thing and they just say, oh, I don't remember. But anyway, that may be wrong. I have no specific recollection. There's no specific recollection. Of that. And, I mean, this is an interesting story. It's a hugely tragic case. This family had multiple kids go to this school. It's very sad. People aren't rooting for the insurance company to lessen their recovery at the school. It's a tragedy all the way around. Oh, my gosh, yeah. Okay, so, but is there some indication that this could be admissible, that this text should have been admitted as a verbal act or present sense or impression or the facts underlying it could be admissible in some other form? If there was additional evidence, I would tell you what's presented by the plaintiff to say, oh, well, this could have come after practice on Friday the 10th, a week before, which, by the way, that's the text exchange where the mom says, okay, fine, I'll drive you. So the mom didn't drive her because of the e-mail on the 14th. The mom had already decided to drive. That's what drove the whole thing. Most of the parents had already said, okay, we're going to Monroe. We're going to spend the night. That's why they didn't take the bus. They knew there was only a handful of kids left that didn't have their own rides already. That's how the situation developed. That's why the e-mail says what it says. Four days before the game, we already know we're not taking the bus. Well, if the e-mail is not a request, it sure is close to a request, and I don't think we're going to go through and parse what the coach or the athletic director, how they worded that e-mail in a small private school where basically they were trying to make sure every kid was covered. I mean, that's the reality of the situation. I liked your questions to her better. I'm sure you did. I'm sure you did. I'll offer this regarding the e-mail. I mean, the e-mail says what it says. What is, to me, dispositive is what it doesn't say. It doesn't say we want you to drive. It doesn't say we're asking you to drive. It doesn't say it would be great if the parents drove. There's none of that in there. Our situation is most of the parents are driving. Now we're inventorying to see who's already got their ride and who might be able to give us a ride. And if you can give somebody else a ride, come bring your license, come bring your insurance, and you'll be approved. That's where the request is, can you give somebody else a ride. So, I mean, I think the district judge's analysis is spot on for what is really a question of law. Here's what this document says and what it doesn't say is, I think, quite revealing in terms of exactly what it's requesting. But, indeed, you do agree that if there were other conversations, they could also form the request. It's not just the document. Sure. And so let's get back to the text, which in the district court's ruling is, number one, it does not carry your burden of proof, and it is the plaintiff's burden of proof to show that this claim comes within the coverage. Would it carry the burden of proof if it was admissible? And number two, well, that's what he said is no. That's what I'm asking. No, I'm asking you. Do you think that's right? No. I think the district court's 100% correct. The text says they want the parents to drive. Well, it doesn't identify who they is that wants the parents to drive. It doesn't identify who. Well, it's a grown-up in charge at the school. It's pretty clear from context. I would disagree, and I appreciate the speculation that they have. Oh, this could have been from the coach saying it's practice. I would say it's equally likely, if not more likely, that this comes from one of the teammates saying, hey, we're going to Monroe next week. The parents always drive when we go to Monroe, so they're going to want the parents to drive. I'd say that is more likely, particularly when you consider the coach's deposition where he says, yeah, we talked to the team about how to get to Monroe, and my best recollection is that happens on Monday, December 13th, the day before the email. So this text comes out three days before that, Friday, December 10th. So we're all speculating here, so it's not proper summary judgment evidence one way or the other. But I would say there's an equally, if not more likely, circumstance that it's one of the other players because, you know, the drive to Monroe is a drive. It's, you know, eight, nine hours on the road. You get home midnight or later. What if it could be either? If we could speculate to either end, but that doesn't get you anywhere for summary judgment purposes. Why not? My appreciation is that for summary judgment, you have to produce evidence to support your claim. If the jury believed that it was that they was the school and that they wanted the parents to drive, and it was an admissible form or could be put in admissible form, doesn't have to be, could be put in admissible form, could come in, then would that create a fact issue? If not, why? I would say that it needs to be identified. Well, you have to, they still has to be the school. Yeah, that they can argue to a jury that they reasonably could be the school, and you could argue to a jury that they is really the other parents, and the jury could decide. I would say that's still directed verdict material. If it could be either way, if evidence is ambiguous. That's not evidence. That's an absence of evidence. It could be either way. If it could, in fact, be the school, then that is evidence. A statement was made by somebody would be the evidence that gets in, in that scenario. There's a reasonable inference that they, in that sentence, is the school authorities who the young man's been talking to. All right. Isn't that a reasonable inference? Well, I would say. You could make the other reasonable inference, but it doesn't have to be 100%. That's why it would be for the jury. Well, I don't think that really gets you to where you need to get to under the policy. Okay. And, I mean, the policy's talking about, it has to come from the school leader, employee, authorized person. I mean, I guess we could speculate that that's a school leader, authorized person as well. The school, yeah. The coach. The coach could be an authorized person. You told me that earlier. Here's that request. They want you, the parent, to drive. But the parent wasn't the one that was driving. There's not a request that the parent ride along with the kid. Does it matter if it's not the parent driving here?  Well, I think it does because it seals the door one step further on any argument that there's a request that the driver be driving the child to school, to Monroe for the game. Because there is no communication from the school to the actual driver. That much is absolutely undisputed. So could the case be summary judgmented, as a verb, on that basis? Yeah, I would say it's dismissed on that basis because, yeah, there has to be a request from an authorized school person. Even with the text or the information from the text included in the record, it could still be summary judgmented on the not the child driving, the parent driving point. I would say yes, and that is what the district court found, and its reasons was that this request really doesn't carry your burden of proof to come within the policy coverage. And I'm not sure, as I'm standing here, I don't remember if you found that because, okay, fine, you've got the sister driving rather than the parent. And so I don't want to say what I'm not sure about. But I think the analysis is the same, that this simply is not the... That's the question. Since it's one step removed, even if you were to consider this and assume arguendo that there is a fact question on whether parents were told to drive, do you still win because it wasn't a parent who drove? I would say yes, because, I mean, there is no request to the sister to drive. And that's what the policy requires is to be an authorized operator. The school personnel have to request your operation for the benefit of the school, which, I mean, that's a whole other issue, is frankly... So you would, that the policy would, it would be that situation if it was an uncle or a boyfriend or girlfriend of a parent, or if any other person other than the actual parent was driving. Any person who wasn't requested by the school, which I think follows fairly the policy language there, is that the school has to be the one to make the request that you use your personal vehicle, which is what they were doing. Does the letter, though, say something like, or others or something like that? What does the letter say? If you were planning on driving, please let me know if you could bring another basketball player, and it's directed to basketball parents. Okay. So if it was another parent driving that child... A basketball parent, I mean... Then that would be a harder case. It would be a harder case and really... If it was arranged or facilitated through the school saying, oh, we told Mrs. Jones that Mr. Smith couldn't take their child, and so we facilitated that. Yeah, and I think you really get back to what the text of the email is. You're approved to be driving for the school's purpose if you bring in your driver's license, and it's all for driving a child who's not your own child. So the school would have shepherded that process if Mrs. Jones was driving Mr. Smith's child? That is correct. So the insurance company would be on the hook then? Well, that would be an insured authorized operator, and there would be coverage for that, yeah. So if it had been arranged. So there were people being arranged like that. As it worked out, there were four kids that needed a ride, and they all rode with the coach. So if the coach had had an accident, he would have been covered. And certainly we're sorry that anyone would have an accident in this situation. Oh, yeah, that's... Yeah, okay. That much arranged. Let's see if I can cast any other pearls of wisdom at you guys here while I bat ya.  We always appreciate pearls of wisdom. Well, I may be overselling ever so slightly. But I did want to mention that, yes, Mrs. Simmons' decision to drive came the Friday before this e-mail. So the fact that the e-mail didn't change the situation at all. I should also mention in this whole present sense impression thing that, well, you've already got that, it's all speculative. The residual exception, which wasn't even argued in the district court, one of the criteria for that is it's got to be more probative than any other evidence. And, in fact, we have a raft of other evidence, the e-mail and the depositions of the various school personnel, so it's actually perhaps the least probative. I'm just trying to put it back to this verbal act thing. I just can imagine a situation where she would testify that, I made the decision to take off of work because I became aware that the school was not going to provide transportation and I needed to do and the parents were supposed to provide transportation. Why wouldn't that be admissible for her to say that? Well, she submitted an affidavit and I don't think that said that. But if she were to say that at trial, why wouldn't that be admissible, establish what she needs to establish and not be inappropriate double hearsay? Because it would be her, what she did based upon what she learned. I would agree with that, although I don't think it's factually accurate and that's why it's not in the affidavit. I think the facts are that everybody said, okay, we're going to Monroe. Most of us are going to drive and go spend the night up there. And so that's the decision that's made from point of beginning. I will also mention that just in case the court were to reverse this and it would need to be remanded because we never did get to our anti-stacking argument, which is the whole separate piece of the Louisiana U.M. statute that I think bars recovery on this. It's not before you, so I won't tell you how the Louisiana U.M. statute works with respect to stacking. But that's a defense that was determined to be moot by the district judge because we didn't get the coverage to begin with. With that, thank you. Thank you. I'd like to start with answering the court's question about Dawn's affidavit. In fact, Your Honor, what you said the affidavit said is what it says. She said she took off work to drive Christopher because apparently she had to drive him because the bus wasn't being used. What you said is in the affidavit, which the district court did not consider. What I want to bring this back to quickly is what was going on here. If you take a look at the principal's testimony from 48 to 66, what happened here was very simple. They would have brought the bus, but a bunch of parents, not Dawn Simmons, decided they wanted to stay in Monroe. So what she says is the school's responsible for providing the transportation. She decided not to use the bus because a bunch of people wanted to stay, and the parents served the same function as the bus. So to say that the parents were not requested email what the coach said, what the principal said to drive their kids is simply not true. The parents were requested to do this because that was the decision that the school made. Christopher wasn't going to walk. Yeah, but he could have ridden with the coach. Yeah, but he didn't have to. He could have ridden with another parent. He didn't have to. But she didn't have to drive either per anything they requested her to do, not in the email. The parents were, as far as the school was concerned, providing the transport, and only the kids who couldn't do that were they going to make the arrangements for. That was what the school set up here. So to come and say we didn't want the parents to do it is simply not true. Now with regard to Lindy, because I think the court is concerned about that, I want to point out this is what the policy actually says. Another person driving the non-owned vehicle is covered operating or using. That's what the policy says. If they wanted to limit the coverage provided in this situation to only the person who was requested had to be operating the car, it would have said that. It says operating or using. Operating or using. It says operating or using a non-owned vehicle at the request of your leader, employee, et cetera. It goes back to the request, and there's no request for the parents to use, to ride along with their kid. It's to drive them. Well, here's where I'll go with that, Your Honor. See, I understand your point, and I'll address it. What the jury will be asked to determine, juries determine these issues. There's nothing to determine. There was never a request for Ms. Simmons to use by riding in the car, to use the car. If it was a request at all, it was a request for her to drive her basketball-playing kid. I understand what you're saying, Your Honor. That's what the evidence says. You don't have any evidence to get to your argument as that part of the policy because there's no request about operating or using. It's just operating. I think the request, Your Honor, was we need you to get your kids their parents. They didn't put a limit and say, parents, you must drive. It said, parents, transport your child, which is exactly what she did. She transported her child, but she made a decision for safety for her daughter to drive back because her eyesight's not good. So do we punish that because she was trying to be safe? It's not a matter of punishing. It's a matter of what the request says and how that policy language is triggered as a result. If you are planning on driving, you, basketball parent. I understand what you're saying, Your Honor. Well, no, it's not what I'm saying. It's what the email says. What you're saying is not supported enough to get to a jury. What I'm saying is that we are focusing heavily on what they said, but the policy itself controls here, and the policy broadens that request to use. And we're clear under Louisiana law, use includes her being in the car while her daughter's driving. I would also point out that Dawn, as the person in control of the car, has the ability to pass permission, and that's what she did. She gave her daughter permission to drive to be safer. And nothing in this email or any of the communications with the students, and then we get back to that text message where they said someone else. And I will add that the AD, as Your Honor pointed out, he didn't, quote, remember. He thinks it was Monday. But his memory is a little sketchy. So a quick question.  So Judge Wilson, y'all are, I wouldn't say talking past each other. We might be. But so you're focusing on, hey, the policy controls. What does the policy cover by its terms? Correct me if I'm wrong. The policy covers only school-requested operators, correct? Correct. That's what Judge Wilson keeps going back to. Well, you say the policy, but the policy says school-requested operators. Where's the request? If the policy wanted to limit the request only to the operator, it could do so. It did not. The policy, which is who we're dealing with here, is an insurance company. The policy says operating or using. School-requested operators or users? The school requested that arrangements be made and the parents take care of it to get the kids to the game. The school was not focusing on that language. They wanted those kids to get to that game, to play in that game. There seems to be a, I see kind of school-requested and school-expected, where the school maybe expects the parents to get their child to the court on time. School-requested, school-expected, that's sort of. School-expected and wanted Christopher Simmons to go to that game to play. And school made the decision not to take the bus. And school said to parents, bring a kid. They didn't say to Dawn, you have to drive. They didn't say that. And the policy says use. That's where I'll leave it. Thank you. We have your argument. We have both arguments. We appreciate them. The case is submitted. This concludes this sitting of the United States Court of Appeals for the Fifth Circuit. And the court will stand adjourned pursuant to the usual order.